UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
ROBERTO ABELEDO ULLOA, *pro se*,                          :
                                                          :
                                Petitioner,               :
                                                          :     **MEMORANDUM AND ORDER**
        -against-                                         :     10-CV-4409 (DLI)
                                                          :
UNITED STATES OF AMERICA,                                 :
                                                          :
                                Respondent.               :
-------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

    *Pro se*[1] petitioner Roberto Abeledo Ulloa ("Ulloa," "Abeledo," or "Petitioner")[2] filed the instant petition challenging his sentence pursuant to 28 U.S.C. § 2255. (*See generally* Pet., Docket Entry No. 1.) Petitioner contends that he received ineffective assistance of counsel during his initial appearance, arraignment, and appeal. Additionally, Petitioner claims that the sentencing judge lacked jurisdiction to impose the sentence because, at the arraignment on the indictment, the judge improperly amended a jurisdictional allegation. Finally, Petitioner alleges that his sentence was in excess of the maximum authorized by 18 U.S.C. § 3551, because the sentencing judge did not properly consider the nature and circumstances of Petitioner's offense. Petitioner requests that the court "vacate and set the sentence aside . . . ; or resentence said Defendant; or grant a new trial; or correct the sentence as may appear appropriate." (Pet. at 16.) For the reasons set forth below, the petition is denied in its entirety.

---

[1] In reviewing the petition, the court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the court interprets the petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

[2] While Petitioner is referred to as Abeledo in the Government's briefs and in the present order, he was referred to as Ulloa in previous court proceedings and submissions.

# BACKGROUND

## I.     Arraignments

On May 25, 2008, Abeledo was arraigned on a complaint and supplemental affidavit charging him with importing more than 1,000 grams of heroin into the United States hidden in his baggage and his intestines when he arrived at John F. Kennedy International Airport ("JFK") on a flight from the Dominican Republic.  (*See generally* Pre-Arraignment Compl. ("Compl."), No. 08-mj-481, Docket Entry No. 1; Supp. Aff., No. 08-mj-481, Docket Entry No. 2; Initial App. Tr., No. 08-mj-481, Docket Entry No. 6.)  The complaint alleged that eight pellet-shaped objects containing heroin and weighing 118.1 grams were found in Abeledo's luggage upon his arrival at JFK (Compl. ¶¶ 2, 5), but that Abeledo had admitted to ingesting ninety-two pellets.  (Compl. ¶ 3.)  The supplemental affidavit alleged that Abeledo ultimately passed a total of ninety pellets, with a total gross weight of approximately 1155.9 grams of heroin.  (Supp. Aff. at 1.)

At the arraignment on the complaint and supplemental affidavit (the "initial appearance"), Petitioner confirmed that he had seen a copy of the complaint and the supplemental affidavit and that he understood that he had been charged with knowingly and intentionally importing a substance containing heroin into the United States.  (Initial App. Tr. at 4.)  The Government indicated its position that a permanent order of detention was appropriate based on the large quantity of heroin brought into the country by Abeledo.  (*Id.* at 4-5.)  When asked whether he had a bail package to offer, Petitioners' trial lawyer, Michael Weil, Esq., of the Federal Defenders Office, stated that he had "nothing to rebut the presumption at this time and should I have a package at a later date, I would ask for leave to come back to court."  (*Id.* at 5.)  The court entered a permanent order of detention based on:  1) the fact that the case involved the importation of narcotics; 2) the serious risk of flight; and 3) Petitioner's failure to present a bail

package.  (*Id.* at 5).  The court granted leave for Petitioner to apply for bail at a later date if he felt he could "put together a package that would satisfy the court . . . ." (*Id.* at 5-6.)

On June 19, 2008, a two-count indictment was filed charging Abeledo with:  1) importing more than one kilogram of heroin into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(1)(A), and 2) possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i).  (*See generally* Indictment, No. 08-cr-418, Docket Entry No. 6.)[3]  The indictment alleged that Petitioner had committed these crimes on or about May 22, 2008, within the Eastern District of New York and elsewhere.  (*Id.* at 1.)

On June 26, 2008, Abeledo was arraigned upon the indictment before the Honorable Charles P. Sifton, Senior District Judge of this court.[4]  (*See* Minute Entry, No. 08-cr-418, Docket Entry No. 8.)  At the arraignment hearing, the judge advised Petitioner of the accusations against him, stating that,

> The first accusation says that sometime around the 22nd of May this year, within the territory or jurisdiction of this court, you knowingly and intentionally imported one kilogram or more of a substance containing heroin.  The second accusation says, essentially, that on the same date you had this quantity of heroin in your possession within the United States with intent to distribute it to others.

(Arraignment Tr., Resp.'s Mem. in Opp., Ex. B at A-17-18).  Petitioner pled not guilty to the charges in the indictment.  (*Id.* at A-18).

## II.     Plea Agreement and Plea Hearing

On July 24, 2008, Petitioner pled guilty, pursuant to a plea agreement, to importing an unspecified quantity of heroin into the United States in violation of 21 U.S.C. § 952(a) and 960(b)(3), a lesser included offense of count one of the indictment.  (*See generally* Plea Tr., No.

---

[3] All references to "No. 08-cr-418" are to the criminal case docket underlying the instant petition.
[4] Sr. Judge Sifton passed away the following year.

08-cr-418, Docket Entry No. 22.)  The plea agreement stated, *inter alia*, that the charge to which Petitioner was pleading guilty carried no mandatory minimum sentence of imprisonment (zero years), a maximum term of imprisonment of twenty years, and a term of supervised release would be imposed within the range of three years to life.  (*See* Plea Agreement ¶ 1, No. 08-cr-418, Resp.'s Mem. in Opp., Ex. B at A-20-25.)  The plea agreement also indicated that Petitioner's estimated base offense level would be 30 under the United States Sentencing Guidelines ("Guidelines").  (*Id.* ¶ 2).  Petitioner was estimated to be subject to a Guidelines sentence range of 51 to 63 months' imprisonment, based upon an adjusted offense level of 24, resulting from a four-point reduction for minimal role and two-point reduction for acceptance of responsibility,[5] and assuming Petitioner fell within Criminal History Category I.  (*Id.* ¶ 2.)  The agreement also noted the following:

> The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court.  If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea.  If the Guidelines calculation of the Court is different from the Guidelines estimate set forth in paragraph 2, the defendant will not be entitled to withdraw the guilty plea.

(*Id.* ¶ 3.)  Additionally, Petitioner agreed not to challenge the drug type and quantity set forth in the lab report.  (*Id.* ¶ 2).

During the plea hearing, the court explained the rights Petitioner was waiving by pleading guilty, and Petitioner, who had been placed under oath (Plea Tr. At 6), confirmed that he understood.[6]  Specifically, the court stated that,

---

[5] The government indicated that it would move for an additional one-level reduction, resulting in an adjusted offense level of 23, if Petitioner plead guilty on or before July 24, 2008.  (*Id.* ¶ 2).  The additional reduction would result in a Guidelines sentence range of 46 to 57 months.  (*Id.*)

[6] Petitioner communicated with the Court with the assistance of a Spanish interpreter.  (*See* Plea Tr. at 2-3.)

. . . each one of you[7] has a right under our constitution . . . not to answer anybody's questions since the questions may tend to incriminate you. However, if you wish to plead guilty, since I'm going to have to ask you these questions, you will have to give up your right to remain silent. Otherwise you can go to trial and preserve your right to silence and you wouldn't have to testify at the trial.

(*Id.* at 7). Abeledo stated that he understood what the judge had explained about his right to remain silent and that he was willing to give up his right to remain silent and answer the judge's questions. (*Id.* at 7-8).

The judge also stated that Petitioner had the right to have the accusations against him decided by a jury trial. The judge explained to Abeledo,

[i]f you go to trial, the prosecutor in your case will have to prove that you are guilty. You don't have to prove that you're innocent. . . . Your lawyer, at your trial, can also offer evidence in your defense if you have any. You can also, I should say, testify as a witness in your own defense; although you don't have to testify because you have the right to remain silent. . . Now, the reason for going over all of this is because if you plead guilty you will be giving up your right to a jury trial as I just explained it. There won't be any trial of any kind. The only proceedings after today's proceedings will be the proceedings relating to your sentence.

(*Id.* at 11-12.) When asked if he understood, the Petitioner responded, "Yes, perfectly." (*Id.* at 12). When asked if he was willing to waive and give up his right to a jury trial, the Petitioner answered, "Yes." (*Id.*)

The court also reviewed the accusations against the Petitioner, and Petitioner confirmed the relevant facts as follows:

THE COURT: Mr. Ulloa, in your case my understanding is that you intend to plead guilty to an accusation which says that sometime around May 22nd of this year you imported a quantity of a substance and [sic] unspecified substance containing heroin. Is that true or not?

MR. ULLOA: Yes.

---

[7] The judge took Petitioner's plea at the same time as another defendant charged with an unrelated crime. (*See generally*, Plea Tr.)

THE COURT:  How did you bring this substance into the country?

MR. ULLOA:  I swallowed it.

THE COURT:  Did you realize at the time that what you were swallowing was some kind of narcotic drug?

MR. ULLOA:  Yes.

THE COURT:  I take if that the purpose of swallowing it was to bring it into this country from another country, is that true?

MR. ULLOA:  Yes.

(*Id.* at 15.)  Moreover, Petitioner stated that he understood that he could be sent to prison for as long as twenty years and placed under supervised release for at least three years as a result of pleading guilty to the charge against him.  (*Id.* at 17-18.)  The Court discussed the Guidelines and stated,

> I am told that the prosecutor estimates that your guidelines would call for a sentence somewhere between 51 and 63 months.  Or actually, if you plead guilty today your guidelines would recommend a sentence somewhere between 46 and 57 months.  . . . I don't know that the guideline calculation is accurate or not . . . I couldn't at this point, assure you that I will impose a sentence within the sentencing guidelines.  So the only thing that is clear is that the sentence here could not be worse than 20 years in prison.

(*Id*. at 18-19).  Petitioner indicated that he understood.  (*Id.* at 19.)

When questioned by the Court about his attorney, Petitioner confirmed that he had an opportunity to discuss the plea with Mr. Weil.  (*Id.* at 11.)[8]  When asked if he was satisfied with the representation given to him by Mr. Weil, Petitioner responded affirmatively.  (*Id.*)  Petitioner also indicated that no one had threatened or forced him to plead guilty, and he was pleading guilty to the accusations brought against him of his own free will.  (*Id.* at 21.)   In light of Petitioner's responses, the Court accepted Petitioner's plea and set a date for sentencing.  (*Id.* at

---

[8] Specifically, the judge asked Petitioner whether he "had a long enough time to talk over with your lawyer what you intend to do today?"  (*Id.* at 11.)

23).

**III.    Sentencing and Direct Appeal**

In contrast to the plea agreement, the Probation Department, in preparing the September 15, 2008 Presentence Investigation Report ("PSR"), computed a total offense level of 21, which incorporated an additional two-point reduction for the safety valve under section 2D1.1(b)(11) of the Guidelines.  (PSR at 7-8, Resp.'s Mem. in Opp., Ex F.)  Probation concluded that Petitioner was in Criminal History Category I.  (PSR at 8).[9]  The PSR also noted that a laboratory report of the Drug Enforcement Administration ("DEA") showed that the total weight of heroin recovered from Abedelo was 966.6 grams, contained in 98 pellets.  (PSR at 3).  Based on an offense level of 21 and a Criminal History Category of I, Probation concluded that Abedela's Guidelines sentencing range was 37 to 46 months, which was lower than that estimated in the plea agreement.  (PSR at 8, 20).

On December 18, 2008, Abeledo was sentenced to the minimum term of incarceration recommended by the Guidelines, 37 months, followed by three years' supervised release.  (*See* Sentencing Tr., No. 08-cr-418, Docket Entry No. 18.)  The court indicated that it reached this conclusion after considering, *inter alia*, Abedela's age and health, the substantial quantity of drugs Petitioner brought into the country, and Petitioner's prior criminal record.  (*Id.* at 8).

Petitioner filed a notice of appeal with the Second Circuit Court of Appeals on January 28, 2009.  (Resp.'s Mem. in Opp. at 5.)  On April 1, 2009, Mary Anne Wirth, Esq., was assigned from the Criminal Justice Act ("CJA") panel to represent Abeledo in connection with his appeal.

---

[9] However, the PSR noted that Abedela had a previous conviction in Italy from August 2002 for trafficking in cocaine for which he was sentenced to four and a half years in custody.  (*Id.*)  Although this conviction was not counted in Petitioner's Criminal History score, the PSR stated that the Court could consider the conviction and other aggravating factors as a basis for an upward departure.  (*Id.* at 21.)

(*Id.* at 6). On September 10, 2009, Wirth filed a brief, pursuant to *Anders v, California*, 386 U.S. 738 (1967), seeking to withdraw as counsel for Abeledo because, in her view, his appeal presented no non-frivolous issues for the Court's review. (*Anders* Brief, Resp.'s Mem. in Opp., Ex. A.) On May 26, 2010, the Second Circuit issued a mandate granting Ms. Wirth's motion to withdraw and the Government's motion for summary affirmance. (*See* Mandate, No. 08-cr-418, Docket Entry No. 20). On September 23, 2010, Petitioner filed the instant petition challenging his sentence pursuant to 28 U.S.C. § 2255.[10]

## DISCUSSION

### I.  Ineffective Assistance of Counsel

The court must evaluate Petitioner's claims of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[11] First, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 687-88. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Second, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, Petitioner claims that he received ineffective assistance of counsel because: (1) at

---

[10] By letter dated September 26, 2013, the government indicates that Petitioner has been deported from the United States to the Dominican Republic. However, "[d]eportation alone does not moot a habeas petition; if granting the writ would lift a statutory bar against a petitioner's reentry, then there is a 'collateral consequence' of his conviction, which establishes a live case or controversy." *Brown v. United States*, 2010 WL 5313546, at *3 (E.D.N.Y. Dec. 17, 2010).

[11] "Although *Strickland* addressed the constitutional standard for ineffective assistance of counsel in the trial counsel context, our Circuit has also adopted the *Strickland* two-prong test in assessing the effectiveness of appellate counsel." *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992).

the Petitioner's initial appearance and arraignment, his trial attorneys, Michael Weil and Justine Harris, failed to object to the Government's request that Petitioner be detained without bail; and (2) Petitioner's appellate attorney, Mary Ann Wirth, filed an *Anders* brief arguing that there were no non-frivolous grounds for appeal. (Pet. at 3-5, 12-14.)

A.    *Failure to Object to Request for Detention without Bail*

Petitioner's ineffective assistance claim based on Mr. Weil and Ms. Harris's representation at his initial appearance and arraignment is unavailing. Petitioner argues that trial counsel should have objected to the Government's motion for a permanent detention order on the grounds that "this is not a case that involves an offense for which a maximum term of imprisonment of ten years or more is prescribed . . . and the Judicial Officer did not find that [Petitioner] has been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1) as required by § 3142(e)(2)(A)." (Pet. at 12.) Petitioner claims that he was prejudiced by his attorneys' "deficient performance," because he might otherwise have been "released . . . and, therefore, been in a more favorable position and physical capacity to deal with the preparation of his defence [sic] and his still life-threatening physical condition . . . and to incidentally enjoy his . . . right to a choice of Counsel . . . ." (*Id.* at 13.)

Defense counsel's failure to object to the Government's request that Petitioner be detained without bail was objectively reasonable under the circumstances of this case, because an objection would have been meritless. "Failure to make a meritless argument does not amount to ineffective assistance." *United States v. Noble*, 363 F. App'x 771, 773 (2d Cir. 2010) (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)). Under the statute cited by defendant, 18 U.S.C. § 3142, a "rebuttable presumption arises that no condition or combination of conditions will reasonable assure the safety of any other person and the community" if the

offense alleged is one "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. 801, *et seq.*" 18 U.S.C. §§ 3142(e)(2) and (f)(1)(c). Abeledo was arraigned on charges that he imported more than one kilogram of heroin into the United States in violation of 21 U.S.C. 952(a) and 960 (*See* Compl., Supp. Aff, Indictment), for which the maximum sentence is life imprisonment. 21 U.S.C. § 960. Thus, the "rebuttable presumption" of 18 U.S.C. § 1342 applied in Mr. Abeledo's case, and an argument to the contrary by Mr. Weil or Ms. Harris probably would have been rejected. Moreover, the magistrate judge presiding at Petitioner's initial appearance indicated that she also considered the serious risk of flight in denying bail. (Initial App. Tr. at 5). Thus, even assuming, *arguendo*, that defense counsel's failure to offer a bail package could be considered unreasonable, Petitioner has failed to show that there is a reasonable probability that he would have been released on bail had Mr. Weil and Ms. Harris acted otherwise.

Accordingly, Petitioner's claim of ineffective assistance based on his trial attorneys' failure to offer a bail package at his initial appearance and arraignment is without merit.

B.      *Anders' Brief*

Petitioner's other ineffective assistance claim—namely, that Ms. Wirth filed an *Anders* brief with the Second Circuit representing that there were no non-frivolous grounds for appeal (Pet. at 3-5)—is also unavailing.

As a preliminary matter, "[t]he filing of an *Anders* brief does not in itself constitute ineffective assistance of counsel." *Anim v. United States*, 2013 WL 4056211, at *7 (S.D.N.Y. Aug. 12, 2013); *Jorge v. United States*, 818 F.Supp. 55, 57 (S.D.N.Y.1993) (citing McCoy v. Court of Appeals of Wisc. Dist. 1, 486 U.S. 429, 442–44 (1988)). "The Court of Appeals of the Second Circuit will not grant an *Anders* motion unless it is satisfied that:  (1) 'counsel has

diligently searched the record for any arguably meritorious issue in support of his client's appeal;' and (2) 'defense counsel's declaration that the appeal would be frivolous is, in fact, legally correct.'" *Torres-Cuesta v. United States*, 2010 WL 3928588, at *7 (E.D.N.Y. Sept. 30, 2010) (quoting *United States v. Burnett*, 989 F.2d 100, 104 (2d Cir.1993)).

Petitioner's claim that Ms. Wirth should have argued on appeal that his guilty plea was deficient (Pet. at 4) is not supported by the record. In her *Anders* brief, Ms. Wirth thoroughly recounted the relevant proceedings in Abeledo's criminal case, including his guilty plea, and she analyzed several possible grounds for appeal before concluding that there were no non-frivolous issues for the court's review. (*See generally*, *Anders* brief). In the context of a challenge to the adequacy of a guilty plea, appellate counsel's *Anders* brief "must discuss why a challenge to the guilty plea would result in an unacceptable risk of adverse consequences and why there are no non-frivolous issues with respect to the plea." *Id.* (citing *United States v. Ibrahim*, 62 F.3d 72, 73–74 (2d Cir. 1995)). "By granting the motion, the Second Circuit indicated its belief that this standard had been met." *See Id.*

Moreover, Petitioner's contention that he was not informed of his rights prior to his plea (*Id.* at 4), is contradicted by the record of the plea allocution. Petitioner was informed, *inter alia*, of: 1) his right to plead not guilty (Plea Tr. at 7-8); 2) his right at trial to "be protected from compelled self-incrimination" (*Id.* at 7-8); 3) the waiver of these rights by pleading guilty (*Id.* at 11-12); and 4) the nature of the charge to which he was pleading. (*Id.* at 15).[12] Contrary to Petitioner's assertion, the Court also determined that there was factual basis for Petitioner's plea. (*Id.*) Although Petitioner was not specifically informed of his right to "compel the attendance of

---

[12] For this reason, Petitioner's contention that his plea was deficient because the court did not "read count one of the indictment as fully written" (*Pro Se* Reply to the Resp.'s Answer ("Reply") at 3, Docket Entry No. 7), is also meritless.

witnesses" at trial (*see id.*), Ms. Wirth specifically addressed this issue in her *Anders* brief and reasonably concluded that Petitioner would not be able to establish plain error upon appeal. (*Anders* Brief at 40).

Finally, Petitioner claims that he was not informed of "the basis for the Court's obligation to calculate the applicable Sentencing Guideline range" (*Pet.* at 4), because the court did not "announce the amount or weight of the imported controlled substance" during the plea allocution. (Reply at 3).[13] Petitioner appears to argue that his sentence could not be based on an amount higher than 118.1 grams, because that is the amount provided in the complaint. However, the complaint states that, in addition to the 118.1 grams (in eight pellets) of a substance containing heroin recovered from Abeledo's luggage, Abeledo had admitted to swallowing ninety-two pellets. The supplemental affidavit, filed two days later, indicates that Abedelo ultimately passed ninety pellets with a gross weight of 1155.9 grams.[14] Significantly, Petitioner stipulated in the plea agreement that he would not challenge the drug type and weight in the lab report. In any event, even if the drug quantity had been miscalculated, Petitioner stated under oath at the plea allocution that he understood that the Guidelines could be inaccurate. (Plea Tr. at 18-19).

In sum, under these circumstances, Petitioner has not shown that, but for Ms. Wirth's

---

[13] Although count one of Petitioner's Indictment charged him knowingly and intentionally importing one kilogram or more of a substance containing heroin (*see* Indictment at 1), Petitioner pled guilty to a lesser included offense of importation of an *unspecified* quantity, pursuant to 21 U.S.C. §§ 952(a) and 960(b)(3). (*See* Plea Agreement ¶ 1). Therefore, the calculation of drug quantity in Petitioners' case did not affect the statutory minimum or maximum sentence in Abeledo's case, but it did determine "the guideline to be used in deciding where within the zero-to twenty-year statutory range" Petitioner should be sentenced. *Adu v. United States*, 2001 WL 761188, at *1 (E.D.N.Y. Apr. 25, 2001).

[14] The discrepancy between the amount of heroin set forth in the PSR—966.6 grams—and the amount set forth in the supplemental affidavit appears to be due to the fact that the PSR set forth the net weight of heroin, while the supplemental affidavit stated the gross weight of the pellets. (*See* Supp. Aff. at 1; PSR at 1).

failure to make certain arguments upon appeal, there is a reasonable likelihood that Petitioner would have won his direct appeal.

**II.    Petitioner's Remaining Claims**

Petitioner's remaining claims are procedurally barred, because they were not raised on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) (finding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."); *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998).

Even if Petitioner's claims were not barred, they would fail on the merits.  First, Petitioner claims that the judge improperly "orally amended" the indictment to cure a jurisdictional defect by stating, during Petitioner's arraignment, that Petitioner was accused of importing heroin "within the territory or jurisdiction of this court."  (Pet. at 6.)  However, Petitioner's Indictment stated that he was alleged to have committed each count "within the Eastern District of New York and elsewhere."  (*See* Indictment).  The jurisdiction of this court is within the Eastern District of New York.  Thus, there was no misstatement by the court and this argument is frivolous.

Second, Petitioner claims that the court "did not duly consider the nature and circumstances of" his offense, because Petitioner was "misinformed" about the weight of the controlled substances upon which the Guidelines were calculated.  (Pet. at 9).  Petitioner's confusion about the quantity of drugs he was found to have imported does not invalidate his plea or sentence for the reasons discussed *supra*, section I B.  Additionally, the record clearly reflects that Petitioner's sentence was based on due consideration of each of the factors enumerated in 18 U.S.C. § 3553(a), as well as the Guidelines.  (*See* Sentencing Tr. at 7-8).  Indeed, Petitioner received a benefit, insofar as the Plea Agreement's estimate of the applicable Guidelines range

was higher than that calculated by Probation and ultimately applied by the sentencing court. The Plea Agreement did not take into consideration that the Petitioner might qualify for the two-level reduction for the safety valve.

In sum, Petitioner has failed to establish that the court lacked jurisdiction in the underlying criminal case or that the court failed to consider the nature and circumstances of his offense upon sentencing.


## CONCLUSION

For the reasons set forth above, Petitioner's request for relief pursuant to 28 U.S.C. § 2255 is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).


SO ORDERED.

Dated: Brooklyn, New York
        September 30, 2013

_____
            /s/
        DORA L. IRIZARRY
        United States District Judge